UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMELIA PONCE,<br><br>          Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>          Defendant. | Case No. 1:20-cv-01664-EPG<br><br>FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(ECF Nos. 22, 23) |

This matter is before the Court on Plaintiff Amelia Ponce's ("Plaintiff") complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration. (ECF No. 1). The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c) with any appeal to the Court of Appeals for the Ninth Circuit. (ECF No. 7, 10, 11).

Plaintiff challenges the decision of the Administrative Law Judge ("ALJ") on the following grounds:

(1) The ALJ's residual functional capacity ("RFC") determination is unsupported by substantial evidence because the ALJ erroneously rejected the opinion of treating physician Dr. Kamal; and

(2) The ALJ erred in rejecting Plaintiff's subjective pain complaints without providing clear and convincing reasons.

1

(ECF No. 22, p. 1). Having reviewed the record, administrative transcript, the briefs of the parties, and the applicable law, the Court finds as follows:

## I. ANALYSIS

### A. Dr. Kamal's opinion

Plaintiff argues that the ALJ's RFC determination is unsupported by substantial evidence because the ALJ erroneously rejected the opinion of treating physician, Dr. Kamal. (ECF No. 22, at p. 6).

This appeal is governed by the Social Security Administration's ("SSA") new rules regarding the treatment of physician opinions because the claims were filed on February 20, 2018. Those new regulations state the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." Revisions to Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017); *see also* 20 C.F.R. §§ 404.1520c (a), 416.920c(a). Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on supportability, consistency, relationship with the claimant, specialization, and other factors. 20 C.F.R. §§ 404.152c(c); 416.920c(c). The most important factors are supportability and consistency. 20 C.F.R. §§ 404.152c(a), (b)(2); 416.920c(a), (b)(2).

Although the regulations eliminate the "physician hierarchy," deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." 20 C.F.R. §§ 404.1520c(a), (b)(1); 416.920c(a), (b)(1). The ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2) ("Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision.").

The Ninth Circuit has not yet had the opportunity to address the impact of the new regulations on the requirement that the ALJ provide "clear and convincing" reasons for

rejecting an uncontradicted physician's opinion and "specific and legitimate reasons" for rejecting a contracted physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995). However, several district courts have given the opinion that these articulation standards still apply. *See, e.g., Stephanie B. v. Commissioner of Social Security* (W.D. Wash., Jan. 7, 2022, No. 2:21-CV-462-DWC) 2022 WL 72062, at *2–3 ("Thus, while the new regulations ask the ALJ to explain, at a minimum, how the ALJ considered the supportability and consistency factors of a medical opinion, if the medical opinion is uncontradicted the ALJ must still cite 'clear and convincing' reasons for rejecting it, and if it is contradicted, the ALJ must still give 'specific and legitimate' reasons for rejecting it."); *see also Kathleen G. v. Comm'r of Soc. Sec.*, No. C20-461 RSM, 2020 WL 6581012 at *3 (W.D. Wash. Nov. 10, 2020) (finding that the new regulations do not clearly supersede the "specific and legitimate" standard because the "specific and legitimate" standard refers not to how an *ALJ* should weigh or evaluate opinions, but rather the standard by which the Court evaluates whether the ALJ has reasonably articulated his or her consideration of the evidence); *Morgan v. Saul,* 2020 WL 11723490, at *5 (C.D. Cal., Oct. 21, 2020) ("the ALJ was obliged under both existing case law and the new regulations to explain, at a minimum, with specific and legitimate reasons, his conclusion that Dr. DePriest's opinion was not supported by the objective medical evidence").

The ALJ included the following discussion regarding the weight given to Dr. Kamal's opinion:

> The undersigned also considered the physical residual functional capacity medical source statement submitted by the claimant's primary care physician, Dr. Kamal, on September 3, 2019 (Exhibit 14F). Dr. Kamal reports that the claimant has a diagnosis of spinal stenosis. Dr. Kamal opined that the claimant could rarely lift and carry less than 5 pounds and never 5 pounds. He opined that the claimant cannot walk one city block or more without rest or severe pain. She cannot walk one block or more on rough or uneven ground. She cannot climb steps without use of a handrail at a reasonable pace. She has problems with balance when ambulating. She has problems with stooping, crouching and bending. The undersigned finds that Dr. Kamal's opinions on this form are highly inconsistent with the objective medical evidence and other evidence of record. This opinion has been considered, but in the view of the overall record, is found not to be persuasive and unsupported by the objective medical evidence. Additionally, the

> undersigned notes that this report is a checkbox form with no significant narrative explanation and he offered no citation to supporting record evidence. Treatment records from Dr. Kamal shows only routine treatment with no objective evidence to support these limitations. (Exhibits 10F; 18F).

(A.R. 41).

In response, the Commissioner reviewed the contrary opinions of Dr. Kiger and Dr. Sacheva, which the ALJ found to be well supported. The Commissioner then explained how those opinions were well supported in terms of their bases for forming the opinions and the underlying objective evidence. Specifically, Dr. Kiger explained that there were no neurological deficits, that Plaintiff was independent in activities of daily living, had conservative treatment, and benefitted from physical therapy. (A.R. 95). Dr. Sachdeva performed an extensive physical examination where Plaintiff's physical extremities were within normal limits in conjunction with the doctor's medical opinion. (A.R. 1199-1203). Additionally, the Commissioner extensively reviewed the record to demonstrate how the medical evidence supported the ALJ's decision, including numerous unremarkable findings as to strength, gait, and neurological conditions. For example, Dr. Kamal noted on multiple occasions that Plaintiff was fit and well. (*See, e.g.*, A.R. 1360, 1368 1373 ("fit and well," "without abnormal findings")).

In her reply, Plaintiff argues that the Commissioner's reasons for preferring the opinions of Dr. Kiger and Dr. Sacheva were not put forth by the ALJ. Plaintiff does not otherwise dispute the Commissioner's explanation of the medical evidence and opinions.

It is true that the ALJ's reasons provided in the discussion of Dr. Kamal's opinion are conclusory and poorly explained. The ALJ stated that Dr. Kamal's opinions are not persuasive or supported by the record, but without pointing to specific records besides Dr. Kamal's treatment records generally. That said, in light of the two contrary medical opinions and objective evidence cited by the Commissioner, the ALJ's conclusion is supported by substantial evidence in the record.

The Court carefully considered whether the ALJ's explanation was sufficient to fulfill the requirements of articulation discussed above, and ultimately concludes that remand is not warranted. Again, the ALJ discussed the contradictory opinions and provided some, albeit brief,

reasons that it found them more consistent with the medical evidence. Additionally, the ALJ's observation that Dr. Kamal's opinion is "a checkbox form with no significant narrative explanation" and "no citation to record evidence," is true. (A.R. 41). Not only is the opinion presented in a checkbox form, nineteen of the questions presented are not answered at all, instead only indicating "N/A." (*See* A.R. 1217-1219 (noting "N/A" in response to numerous questions such as how long Plaintiff needs to lie down during an 8 hour workday and whether Plaintiff needs an assistive device to walk)). Furthermore, Dr. Kamal did not check any box in response to the prompt to "indicate the items upon which you base the opinions given in this report." (A.R. 1219).

Additionally, the ALJ includes an extensive discussion of the objective medical evidence elsewhere in her opinion, which is cited below in connection with the next issue. This explanation provides further context for understanding the ALJ's statements in connection with Dr. Kamal's opinion.

For those reasons, the Court declines to find that the ALJ's RFC determination is unsupported by substantial evidence because the ALJ erroneously rejected the opinion of Dr. Kamal.

### B. Plaintiff's Subjecting Symptom Testimony

Plaintiff next argues that the ALJ erred in rejecting Plaintiff's subjective pain complaints without providing clear and convincing reasons.

The Ninth Circuit has provided the following guidance regarding a plaintiff's subjective complaints:

> Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *see also Cotton v. Bowen,* 799 F.2d 1403, 1407 (9th Cir. 1986) ("it is improper as a matter of law to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings"). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be "clear and convincing." *Swenson v. Sullivan,* 876 F.2d 683, 687 (9th Cir. 1989). General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.

*Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995), *as amended* (Apr. 9, 1996).

The ALJ made the following findings regarding Plaintiff's subjective symptom testimony:

> Overall, the longitudinal evidence of record does not support the claimant's allegations concerning the intensity, persistence, and limiting effects of her symptoms. Giving the claimant the benefit of the doubt, crediting the subjective factors as much as the evidence allows; however, the allegations as to functional limitations simply are not supported by the evidence as a whole. The evidence of record suggests that the claimant is more functional than alleged.
> Physically, the medical evidence of record shows that the claimant has history of pancreatic tumor surgery, degenerative disc disease and lumbar spondylosis and some radiculopathy. However, the objective medical evidence of record demonstrates that the claimant's impairments are neither as debilitating nor disabling as alleged and that she has received routing and conservative treatment for her impairments with largely normal examinations.
>
> Physical examinations in the medical records show some limitations, but do not support that the claimant would have limitations greater than those given in the residual functional capacity in the section heading. While the claimant has history of pancreatic tumor surgery, she has had no surgery for this condition since March 2017 (Exhibit 2F/7). The claimant received routine and conservative treatment and she does not meet any high risk criteria (Exhibit 2F/17). Generally, surveillance of remaining pancreas should be performed every two years (Exhibit 2F/17). There is no evidence of emergency department visits or inpatient hospitalizations.
>
> While the claimant has degenerative disc disease and lumbar spondylosis and some radiculopathy, she also received routine and conservative care for these conditions. Despite the claimant's subjective complaints, she has had no surgeries, inpatient hospitalizations or emergency department visits related to these concerns. The claimant was recommended she continue with conservative treatment management (Exhibit 20F/5). There was no evidence of lower or upper extremity strength (Exhibits 3F/176-177; 19F/8). Furthermore, the evidence demonstrates that the claimant used no assistive devices for ambulation, such as a cane or walker, and none was prescribed. Physical examination findings revealed the claimant had a normal gait and used no assistive device for ambulation (Exhibits 2F; 3F; 5F; 6F; 10F; 21F). The claimant denies any falls or balance issues and she does not require assistance for ambulation (Exhibit 20F/1).
>
> Despite the claimant's limitations, she has shown an ability to engage in many activities of daily living. In evaluating the claimant's symptoms as described in 20CFR 404.1529(c)(3), 416.929(c)(3) and Social Security Ruling 16-3p, there are several reasons why the claimant's allegations of debilitating symptoms, would be deemed to be not wholly persuasive nor consistent with the evidence in the record. First the claimant has described daily activities, which are not limited to th extent

one would expect, given the complaints of disabling symptoms and limitations. Claimant's allegations in the record as to severity and limits and testimony at hearing are not fully supported by medical evidence of record and not consistent with acknowledged activity level.

At the hearing, she reports that she resides at home with children and full-time employed husband, so functions independently during the day. She notes that her son goes to college parttime so he is home "sometimes." She drives herself to the grocery store and to appointments. She drives 3-4 times per week. She prepares lunch for her and her husband. She takes medications as prescribed on her own. She maintains the house and manages money, although her husband pays the bills. At Exhibit 13F/3, the claimant does not require assistance to bathe, get dressed, keep appointments, clean house or drive to appointments. In addition, she still has children at home and cares for her family. She does not require assistance getting dressed, cleaning the house, cooking, driving, and carrying for the family (Exhibit 13F/3).

At Exhibit 4E, she reports no problems with personal care, including dressing and bathing. She is able to care for her personal needs, as well as those of her husband and children. She reports she cooks lunch and dinner. She prepares meals daily. She does household chores such as washing dishes, cooking, and folding laundry with breaks. She is able to drive a car and when going out, she can go out alone. She shops in-stores, manages money, reads and watches television. She takes short walks two times per week. She spends time with others almost daily. On a regular basis, she goes to church. She follows both written and spoken instructions "good." She handles stress "good" and she handles changes in routine "good." She does not use crutches, walker, wheelchair, cane, or a brace/splint.

At Exhibit 16F/1, she reports she can tolerate chores, weight bearing activities, and activities of daily living longer without increasing pain and was sleeping better at night. At Exhibit 10F/66, she reports she is able to clean home, drive, cook, and bathe/dress herself.

Treatment notes from her primary care physician, Dr. Kamal, revealed the claimant's preferred language is Spanish; however, claimant "does not need an interpreter" (Exhibits 3F/223; 18F/77, 83, 89, 96, 100, 105, 109, 120). The claimant had no barriers to learning (Exhibit 18F/31, 40). In July 2019, the record shows that the claimant walks 3 times per week; exercises for 40 minutes per day; recommended 30 minutes daily of physical activity (Exhibit 18F/31, 40). In November 2019, the claimant was encouraged to stay active for 30 minutes, 5 times a week (Exhibit 18F/5).

Second, although the claimant has received treatment for the allegedly disabling impairments that treatment has been essentially routine and conservative. This level of activity suggests that the claimant could perform work on a sustained and

> continuous basis within the above parameters. Despite the claimant's testimony of persistent symptoms and active treatment, her physical and mental examination findings do not support the severity of her subjective complaints, and her functional abilities—as noted above—are inconsistent with the severity of the claimed physical and mental deficits (Exhibits 1F-21F).
>
> Overall, the objective treatment findings and frequency of treatment, and the ability to perform activities of daily living, to perform hobbies, and to function independently are inconsistent with the severity of her claimed physical and mental limitations. However, the undersigned affords the above restrictions in the residual functional capacity to accommodate the claimant's allegations.

(A.R. 38-39).

Plaintiff argues that the ALJ failed to identify the testimony that was not credible and what evidence undermines that testimony. The Commissioner responded again with an extensive explanation of the record and description of how it contradicted Plaintiff's subjective symptom testimony.

The Court agrees that much of the Commissioner's explanation in its opposition brief is not contained in the ALJ's opinion. Nevertheless, the Court declines to remand on this basis as well. As the ALJ summarized earlier in her opinion, the Plaintiff's allegations of disability largely concerned her purported limitations on movement, including standing, walking, and lifting. The ALJ's discussion of medical evidence referenced contradictory medical evidence regarding normal physical examinations, normal findings of range of motion and strength. It also cites reports of improvement from physical therapy and extensive activities of daily living. Taken as whole, the Court finds that the ALJ's reasons for not fully crediting Plaintiff's subjective symptom testimony are sufficiently supported.

\\\
\\\
\\\
\\\
\\\

## II. CONCLUSION AND ORDER

Thus, the decision of the Commissioner of Social Security is hereby affirmed. And the Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated: __**January 21, 2022**__        /s/ Erica P. Grosjean
                                    UNITED STATES MAGISTRATE JUDGE